IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARY SHAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 2:18-cv-01651-RJC |
| | ) |
| MCCLYMONDS SUPPLY & TRANSIT CO., INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Robert J. Colville, United States District Judge.

Before the Court is a motion for summary judgment filed on behalf of defendant McClymonds Supply & Transit Co., Inc. ("McClymonds" or "Defendant") (ECF No. 25). For the reasons stated herein, the motion will be denied.

## I. Procedural and Factual Background

This action was initiated with the filing of a complaint on December 12, 2018. (ECF No. 1). Plaintiff Gary Shay ("Plaintiff") alleges age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* (Count I) and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §951, *et seq.* (Count II). Defendant has filed a motion for summary judgment, the matter has been fully briefed, and is now ripe for disposition.

We have jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

1

The central issue[1] is whether defendant McClymonds was a joint employer of Plaintiff at the time of the alleged discriminatory conduct, or whether Plaintiff was in fact an employee of Muddy Creek Leasing, Inc. ("Muddy Creek"), a non-defendant sister corporation.[2] Plaintiff argues that McClymonds and Muddy Creek were acting as joint employers when the decision was made not to call Plaintiff back from his temporary layoff as a worker in aggregates stocking.

Unless otherwise noted, the following facts are not in dispute. The McClymonds trucking operations are headquartered in Portersville, Butler County, Pennsylvania. (Exhibit E, ¶ 2). McClymonds trucking operations are an affiliated group of Pennsylvania entities, each of which is engaged in some particular aspect of the trucking business and/or the production, handling and transportation of aggregates and materials. (Exhibit E. at ¶ 3). Two of the entities in the McClymonds affiliated group are defendant McClymonds and Muddy Creek. McClymonds is a trucking company that possesses "all requisite motor carrier registrations, licenses and permits needed to haul and transport goods and materials over the various roads and highways." (Affidavit of Mark McClymonds, President and CEO of McClymonds ("McClymonds Aff.") (Doc. 25- 8) at ¶ 5).

Muddy Creek is McClymonds' "sister corporation." (McClymonds Aff. at ¶ 4). It operates a repair garage employing approximately 40 mechanics and some truck drivers with Commercial Driver's Licenses ("CDL"s). (Ex. E at ¶ 6). These CDL drivers perform what are known as shuttle work (transporting drivers or empty trucks to and from place to place), repair parts procurement, and aggregates stocking operations. (*Id*.) Muddy Creek is not, however, a

---

[1] We have not been asked to decide if there is a genuine dispute of material fact as to the alleged discriminatory adverse employment action.
[2] Plaintiff's charge of discrimination with the Equal Employment Opportunity Commission named McClymonds only. In its Position Letter with the EEOC, McClymonds asserted plaintiff had erroneously identified his employer and should have named Muddy Creek. To date Plaintiff has not pursued a charge against Muddy Creek.

2

registered motor carrier and has no authorization to operate trucks transporting materials on the highways and roadways. (*Id*. at ¶6; and Exhibit F at ¶6). It lacks the various motor carrier registrations, licenses, and permits held by McClymonds. (*Id.* at ¶ 6; *accord* Affidavit of Frank Zbuckvich ("Zbuckvich Aff.") (Doc. 25-9) at ¶ 5). While that authorization is not required for shuttle work or repair parts procurement, it is for aggregates stocking. (*Id*.) Aggregates stocking, the position Plaintiff previously held, involves driving a triaxle dump truck filled with aggregate on the roadways from the location where the aggregate is mined to the quarry where it is processed and stored. (Exhibit F, ¶5).

Plaintiff started working for McClymonds[3] in 1997. (*See* Deposition of Plaintiff Gary Shay ("Shay Dep.") (Ex. 3) at 44:7-44:15). At the time of hire, Plaintiff completed various documents specifically identifying McClymonds as the employer. These documents include: (a) a McClymonds "Driver's Application for Employment," (b) a McClymonds "Request for Check of Driving Record," (c) a McClymonds "Request for Information from Previous Employer," (d) a McClymonds "Record of Road Test," (e) a McClymonds consent for alcohol/controlled substance information, and (f) an IRS I-9 listing McClymonds as the employer. (*See* Exhibits 4-9). Plaintiff's assigned truck always has been registered, leased and operated by McClymonds. (*See* Zbuckvich Dep. (Ex. 1) at 40:9-41:17, 46:3-46:5). The truck displayed the "McClymonds Supply & Transit" logo. (*See id*. at 39:1-39:8; Shay Dep. (Ex. 4) at 172:16-173:3).

Beginning in 2012, Plaintiff and 3 or 4 other drivers were offered in late-Fall voluntary layoffs when the stocking operations were shut down for the winter. Each year, Frank Zbuckvich, who is McClymonds' Vice President and General Manager, and also, General

---

[3] Defendant characterizes this as "the McClymonds trucking entities." When Plaintiff first began working for McClymonds trucking operations, he worked for West Penn Aggregates, Inc., a sister corporation to Muddy Creek and McClymonds.

Manager of Muddy Creek, would temporarily layoff Plaintiff along with "a few of the other drivers that were older." (Zbuckvich Dep. (Ex. 1) at 126:10-129:10). These employees would then get called back in or around April of the next year. (*See id.; accord* Zbuckvich Aff. (Doc. 25-9) at ¶ 7). Plaintiff participated in the above pattern of temporary layoffs and call-backs for the last 10-11 years of his employment. (*See* Zbuckvich Dep. (Ex. 1) at 126:10-129:17, 131:16-132:6). Plaintiff "welcomed" these layoff opportunities and accepted the offers because he made more money collecting unemployment than he would have made performing the work available to him in the winter months.  (Ex. N. pp. 59, 70, 77-78).

Per the above pattern, Plaintiff performed aggregates stocking operations beginning in early May of 2017 and ending in late November 2017, when he was temporarily laid off. (Shay Dep. (Ex. 4) at 16:22-16:25; *accord* Zbuckvich Aff. (Doc. 25-9) at ¶ 7). He was offered a voluntary lay off, which he accepted. During his temporary layoff, McClymonds required Plaintiff to attend two meetings in approximately January 2018 and February/March 2018. (*See* Zbuckvich Dep. (Ex. 1) at 133:24- 135:1, 136:22-137:2). The first meeting was a "mine safety meeting" at McClymonds' headquarters. (*See* Zbuckvich Dep. (Ex. 1) at 49:10-49:21, 51:12-52:13, 56:10-57:3). The second meeting concerned "company safety" and was run by McClymonds staff. (*See id*. at 57:8-57:19). All drivers, including those paid directly by McClymonds, attended the above meetings. (*See* Zbuckvich Dep. (Ex. 1) at 51:11-52:6). During the 2017-18 Winter lay-off, Plaintiff believed that he was still employed by McClymonds. (*See* Shay Dep. (Ex. 4) at 189:13-190:4, 192:3-192:20). Specifically, Plaintiff testified:

> Q: And did you go to those meetings because you understood that you were still working for McClymonds?
>
> A: Absolutely. Absolutely.

(*Id.* at 192:13-192:16).

However, in April 2018 Plaintiff, age 77 at the time, telephoned Zbuckvich, who informed him he had decided not to call Plaintiff back to work. (*See id*. at 124:20-124:24, 9:19-9:24; Shay Dep. (Ex. 4) at 181:22-182:6). During an April 2018 phone call, Mr. Zbuckvich claims that he told Plaintiff that "we're not going to bring you back to work this year." (Zbuckvich Dep. (Ex. 1) at 161:11-161:12). However, Plaintiff recalls that Mr. Zbuckvich specifically referenced Plaintiff's age during this call:

> I told him who it was and I was wondering about getting called back there, about time to get back. He said, 'Well, I don't think we are going to call you back this year.' And I said to him very bluntly, 'Frank, what the hell did I do wrong?' 'Oh no,' he said, 'did nothing wrong for 20 years, done a good job for us. I'm just concerned about your age.' Exact words he told me.

(Shay Dep. (Ex. 4) at 133:22-134:5; *see also* Deposition of Lynda Shay (Ex. 15) at 7:14-7:19, 8:19-9:14). Mr. Zbuckvich denies saying anything related to Plaintiff's age.

Mr. Zbuckvich obtained McClymonds' CEO/President Mark McClymonds' approval for the decision to not call-back Plaintiff. (*See* Zbuckvich Dep. (Ex. 1) at 125:2-125:14). In offering a non-discriminatory rationale for its refusal to return Plaintiff to work, McClymonds specifically links its decision to Plaintiff's purported inability to safely drive McClymonds' truck. (*See, e.g*., McClymonds Response to Interrogatories and Document Requests (Ex. 16) at pg. 3 (Q: "Describe the reason or reasons why Plaintiff's employment was terminated." A: "It was believed that Mr. Shay was no longer able to safely operate a 73,000 pound vehicle on the highway and perform the duties required of the job.")).

According to McClymonds, Mr. Zbuckvich, could only have been speaking for Muddy Creek because Plaintiff had ceased performing leased services for McClymonds months prior to that conversation. Instead, plaintiff had been on layoff and receiving unemployment

compensation from Muddy Creek during the 4 ½ months that preceded the phone call with Mr. Zbuckvich.

Muddy Creek "leased" Plaintiff to McClymonds. (*See* McClymonds Statement (Doc. 25) at ¶18). Plaintiff's "weekly paychecks were deposited into his bank account by Muddy Creek." (*Id.* at ¶ 17). The employee leasing arrangement by which Muddy Creek leased plaintiff to McClymonds Supply for aggregates stocking was reduced to writing in 2016. That written Employee Leasing Agreement ("ELA") provides, inter alia, that: a) Leased Employees are to remain employees of the Lessor Party (i.e., Muddy Creek); b) the Leased Employee shall perform work for the Lessee Party (i.e., McClymonds Supply) under its supervision; and c) the Lessor Party (Muddy Creek) retains ultimate control over the Leased Employee and the authority to assign, reassign, hire and terminate the Leased Employee and to set rates of pay and benefits. (Exhibit H, ¶¶ 2-4).

However, McClymonds funded Plaintiff's compensation. (*See* McClymonds Aff. (Doc. 25-8) at ¶ 8 (leased employees "are reimbursed by McClymonds [ . . . ] for the compensation paid to the employee"); *accord* ELA (Doc. 25-11) at Section 5). During plaintiff's voluntary layoffs, the costs of his unemployment benefits were charged to the account of Muddy Creek by the Commonwealth of Pennsylvania. Muddy Creek was not compensated under the employee leasing arrangements for the costs and charges incurred for plaintiff's unemployment insurance and benefits. (Exhibit F, ¶9; Exhibit L (Cw. of PA Notices of Benefits charged to Muddy Creek); and Supplemental Appendix, Exhibit O, ¶4). Plaintiff enrolled in the Muddy Creek Highmark Health Insurance plan and the Muddy Creek direct payroll deposit program. (Exhibit I).

Under the applicable lease agreement, Plaintiff was under McClymonds' "direction, supervision, and instruction" and was required to observe all of McClymonds' "rules, policies,

6

and procedures." (ELA (Doc. 25-11) at Section 3; *accord* McClymonds Dep. (Ex. 2) at 29:17-29:22). McClymonds had the authority to terminate Plaintiff's employment. (*See* McClymonds Dep. (Ex. 2) at 31:24-32:8). McClymonds also has the authority under the ELA to request the removal of a leased driver such as Plaintiff: "a Lessee Party [McClymonds] may at any time request the removal of specific Leased Employees [such as Plaintiff] if, in the good faith judgment of the Lessee Party [McClymonds], removal would be in the best interest of its business." (ELA (Doc. 25- 11) at Section 4).

    The 2016 ELA also states in pertinent part:

    2. … [A]ll Leased Employees performing services for lease to a Lessee Party under this Agreement shall remain employees of the Lessor Party [i.e., Muddy Creek]….

    3. … Each Lessor Party shall retain the authority to assign or reassign Leased Employees to particular jobs, to hire and terminate Leased Employees, and to set the rates of pay and benefits for Leased Employees.

    4. … [E]ach Lessor Party, as the employer of its Leased Employees, will have ultimate control over its Leased Employees, including but not limited to, the right to terminate the employment of any of its Leased Employees…

(Exhibit H, Employee Leasing Agreement, ¶s 2-4).

    In addition, Plaintiff was required to submit to drug and alcohol tests administered by McClymonds. (*See* Zbuckvich Dep. (Ex. 1) at 47:12-48:4, 60:10-62:3; Results of DOT Controlled Substance Test attached as Exhibit 10). Also, Plaintiff was required to be periodically evaluated by medical providers selected by and under contract with McClymonds. (*See* Zbuckvich Dep. (Ex. 1) at 74:14-76:8).

    Regarding his compensation, Plaintiff was required to complete and submit to McClymonds "daily sheets" (bearing McClymonds name) for purposes of determining his pay. (*See id.* at 79:13-81:16, 82:12-83:4, 99:24-100:3; Shay Dep. (Ex. 4) at 173:4-174:14; *see also* Exhibit 12). Likewise, Plaintiff was required to complete and submit to McClymonds "hourly

7

slips" (bearing McClymonds name) for purposes of determining his pay. (*See* Zbuckvich Dep. (Ex. 1) at 88:21-91:11, 99:24-100:3; Shay Dep. (Ex. 4) at 175:23-176:3; *see also* Exhibit 13 (sample hourly slip)). Similarly, Plaintiff was required to complete and submit to McClymonds "sales books" (bearing McClymonds name) for purposes of determining his pay. (*See* Zbuckvich Dep. (Ex. 1) at 83:9-85:18, 99:24-100:3; Shay Dep. (Ex. 4) at 146:10-146:11, 150:18-151:9, 174:21-175:3, 175:12-175:22; *see also* Exhibit 14).

McClymonds and Muddy Creek operate out of the same facility grounds. (*See* Deposition of Frank Zbuckvich ("Zbuckvich Dep.") (Ex. 1) at 118:6-118:22). McClymonds and Muddy Creek share a common employee handbook, common safety policies, and common drug and alcohol policies. (*See* Zbuckvich Dep. (Ex.1) at 104:22-106:1; Deposition of Mark McClymonds ("McClymonds Dep.") (Ex. 2) at 26:13-26:17). Mark McClymonds is the President and CEO of both McClymonds and Muddy Creek. (*See* McClymonds Aff. (Doc. 25-8) at ¶ 4).

As noted *supra*, Frank Zbuckvich, working out of a single office location, serves as the Vice President/General Manager of McClymonds and the General Manager of Muddy Creek. (*See* Zbuckvich Dep. (Ex. 1) at 9:14-10:1; 19:8-19:14). McClymonds and Muddy Creek share a common Chief Financial Officer, *(see* Zbuckvich Dep. (Ex. 1) at 13:16-14:6), and a common safety officer, (*see id*. at 31:19-32:24). Heather Venesky, working out of a single office, is the Human Resources Manager for both McClymonds and Muddy Creek. (*See* Zbuckvich Dep. (Ex. 1) at 17:3-17:16; 19:24-20:5). Lynda Bailey, working out of a single office, handles all employee payroll functions for both McClymonds and Muddy Creek. (*See* Zbuckvich Dep. (Ex. 1) at 15:1-15:23; 19:15-19:23).

Employee payroll data for McClymonds and Muddy Creek employees is maintained on a common computer server. *(See* McClymonds Dep. (Ex. 2) at 12:8-13:3). Additionally,

McClymonds and Muddy Creek employees participate in a common 401(k) retirement plan. (*See* McClymonds Dep. (Ex. 2) at 13:20-13:24). Furthermore, personnel files, drug tests results, driver qualification files, and other documents for McClymonds and Muddy Creek employees are maintained together in a single office location. (*See* Zbuckvich Dep. (Ex. 1) at 21:11-22:15, 60:25-62:1, 64:1-64:7, 92:11-93:24).

## II.     Standard of Review

Summary judgment may be granted where the moving party shows that there is no genuine dispute about any material fact, and that judgment as a matter of law is warranted. Fed. R. Civ. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations, or determine the truth of the matter; rather, its function is to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150–51 (2000) (citing decisions); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–19 (1986); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998).

The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the

outcome of the suit under the governing substantive law—will preclude the entry of summary judgment. *Liberty Lobby*, 477 U.S. at 248.

### III. Discussion

McClymonds admits that "while plaintiff Shay was working on stocking operations or materials transport for McClymonds Supply, McClymonds Supply and Muddy Creek were acting as joint employers." (ECF No.26 at 5). McClymonds argues judgment should be entered in its favor and against Plaintiff because: it was not plaintiff's employer in April of 2018, it did not lay him off, and did not have the power to lay him off, dismiss him, or call him back from layoff. McClymonds cites to the terms of the ELA, as well as case law in which courts have dismissed plaintiffs' discrimination claims because plaintiffs were employed by temporary staffing agencies, which had the power to supervise, hire and fire, rather than non-party prospective employers (staffed by the agencies) where they performed job duties. Plaintiff argues that a reasonable fact finder could conclude based on the evidence of record that McClymonds acted as a joint employer when its Vice President/General Manager did not call back Plaintiff. Plaintiff also argues that even if one were to give credit to McClymonds' argument that its joint employer's status ended before April 2018, he was a prospective joint employee of McClymonds and Muddy Creek and that actions of prospective employers are actionable under the ADEA and PHRA.

In *Graves v. Lowery,* the Third Circuit extended the "joint employer" theory of liability to the Title VII context. 117 F.3d 723, 727 (3d Cir.1997). Additionally, as explained by Judge Yohn in *Myers v. Garfield & Johnson Enterprises, Inc.,* district courts in the Third Circuit have distilled joint employer analysis in Title VII cases to three factors:

>(1) Authority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours;
>
>(2) Day-to-day supervision of employees, including employee discipline; and
>
>(3) Control of employee records, including payroll, insurance, taxes and the like.

679 F.Supp.2d 598, 607–08 (E.D.Pa.2010) (internal citations omitted). "No single factor is dispositive and a weak showing on one factor may be offset by a strong showing on the other two." *Id.* at 608 (internal citations omitted); *see also In re Enter. Rent–A–Car Wage & Hour Employment Practices Litig.,* 683 F.3d 462, 467 (3d Cir.2012) (finding that the district court need not "decide that *every* factor weighs against joint employment") (emphasis in original) (citing *Zheng v. Liberty Apparel Co.,* 355 F.3d 61, 76–77 (2d Cir.2003)). Further, the employee's beliefs and expectations are also relevant in determining whether there is joint employer status. *Graves,* 117 F.3d at 727–29. In sum, determination of whether a defendant is a "joint employer" under Title VII requires careful consideration of *all* the circumstances surrounding the work relationship. *See In re Enter. Rent–A–Car.,* 683 F.3d at 469 ("[D]istrict courts should not be confined to 'narrow legalistic definitions' and must instead consider all the relevant evidence, including evidence that does not fall neatly within one of the above factors.") (internal citations omitted).

As to the first factor, based on the record evidence, there is a genuine dispute of material fact. The lease agreement provided that Plaintiff was under McClymonds' "direction, supervision, and instruction" and Plaintiff was required to observe all of McClymonds' "rules, policies, and procedures." ELA at Section 3. McClymonds had the authority under the ELA to request the removal of a leased driver: "a Lessee Party may at any time request the removal of specific Leased Employees if, in the good faith judgment of the Lessee Party, removal would be

11

in the best interest of its business." ELA at Section 4. Defendant argues that this removal provision is not material to its motion because Plaintiff wasn't working at all and was laid off from Muddy Creek, and argues therefore there was nothing to request removal from.   In addition, Mark McClymonds testified that McClymonds Supply did not have the authority to terminate plaintiff.   Furthermore, the ELA provides that "[A]ll Leased Employees . . . shall remain employees of the Lessor Party" and that the "Lessor Party shall retain the authority to . . . hire and terminate Leased Employees" and "will have ultimate control over its Leased Employees, including . . . the right to terminate the employment of any of its Leased Employees."  (ELA at para. 2-4).

As to work rules and assignments, and other conditions of employment, we note the following.  The companies have a common safety officer, common human resource manager, and share payroll functions. Plaintiff was required to submit to drug and alcohol tests administered by McClymonds. Both companies shared a common employee handbook, safety policies, and drug and alcohol policies.  McClymonds required Plaintiff to attend two meetings in early 2018, concerning safety; and one meeting was run by McClymonds staff, the other took place at McClymonds' headquarter.

As to the second factor, day-to-day supervision of employees, including employee discipline, we note the following**.** There is very little record evidence regarding employee discipline.  However, it is undisputed that the ELA provided that Plaintiff was under McClymonds' "direction, supervision, and instruction" and was required to observe all of McClymonds' "rules, policies, and procedures."  (ELA at Section 3).

Regarding control of employee records, including payroll, insurance, taxes and the like,

there is no dispute Plaintiff was required to complete and submit "daily sheets," "hourly slips," and "sales books" to McClymonds to determine his pay; all said documents bore McClymonds' name. Lynda Bailey, working out of a single office, handles all employee payroll functions for both McClymonds and Muddy Creek. McClymonds and Muddy Creek employees participate in a common 401(k). Personnel files, drug test results, driver qualification files and other employee documents for both entities are maintained in a single office location. Although Plaintiff's paycheck was deposited by Muddy Creek, McClymonds funded his compensation. *See Graves §117 F.3d at 727* (defendant could be plaintiff's employer even though it did not pay plaintiffs salaries).

In looking at the uncontroverted record evidence it is clear that there is a genuine dispute of material fact as to whether the defendant here operated as a joint employer with Muddy Creek. McClymonds admits it was a joint employer prior to April of 2018. The functional relationship between the parties including the vast instances of overlap in the relevant areas. When we consider all the circumstances surrounding the work relationship, including the history between the parties, the wording of the ELA, the conditions of employment placed on Plaintiff, how he was paid and how the business operations were intermingled, we come to the only logical conclusion, that the Defendant has not shown that it was not a joint employer for purposes of employment discrimination liability. A reasonable fact finder, based on the record, could also determine plaintiff was a prospective joint employee of McClymonds and Muddy Creek; actions of prospective employers are actionable under the ADEA and PHRA. 29 U.S.C. §623 (a)(1); 43 P.S. § 955(a); *Tyrrell v. City of Scranton*, 134 F.Supp.2d 373, 380 (M.D. Pa. 2001).

## IV.  Conclusion

      For the foregoing reasons, summary judgment will be denied.

An appropriate Order of Court will follow.

| | |
|---|---|
| Dated:  June 17, 2020 | s/ *Robert J. Colville*<br>Robert J. Colville<br>United States District Judge |

cc: All counsel of record via CM-ECF